**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 22-cv-60463-BLOOM/Valle**

GS HOLISTIC, LLC,

    Plaintiff,

v.

ENVIROCURE, LLC,
*also known as*
Pure Dispensary, and
HASSAN ABID,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR DEFAULT FINAL JUDGMENT AGAINST BOTH DEFENDANTS

**THIS CAUSE** is before the Court upon Plaintiff GS Holistic, LLC's ("Plaintiff" or "GS") Motion for Default Final Judgment Against Both Defendants, ECF No. [20] ("Motion").[1] A Clerk's Default was entered against Defendants Envirocure, LLC, and Hassan Abid (collectively, "Defendants") on March 29, 2022, and April, 21, 2022, respectively, as Defendants failed to appear, answer, or otherwise plead to the Complaint, ECF No. [1] ("Complaint"), despite having been served. *See* ECF Nos. [10], [14]. The Court has carefully reviewed the Motion, the Complaint,

---

[1] Plaintiff previously filed a Motion for Default Final Judgment Against Both Defendants, ECF No. [18], which the Court denied because Plaintiff failed comply with the Court's order requiring a proposed order and final judgment that detailed the factual and legal basis for default. *See* ECF No. [19]. In denying the first Motion for Default Final Judgment Against Both Defendants, the Court specifically instructed Plaintiff to "detail both the **factual and legal basis for default**." *See id.* at 2 (emphasis in original). Plaintiff has once again failed to comply with the Court's Order and filed a factually and legally deficient proposed order and final judgment. The Court has, therefore, labored through Plaintiff's Motion to set forth the factual and legal basis for default. The Court again cautions Plaintiff and Plaintiff's Counsel that failure to comply with the Court's orders may result in sanctions.

the record, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted.

### I. FACTUAL BACKGROUND

#### a. The "STÜNDENGLASS" Trademarks and Plaintiff's Business

According to the Complaint, for approximately two years, Plaintiff has worked to distinguish the Stündenglass brand as the premier manufacturer of glass infusers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience. ECF No. [1] ¶ 9. Stündenglass branded products embody a painstaking attention to detail, which is evident in many facets of authentic Stündenglass branded products. *Id.* It is precisely because of the unyielding quest for quality and unsurpassed innovation that Stündenglass branded products have a significant following and appreciation amongst consumers in the United States and internationally. *Id.*

As a result of the continuous and extensive use of the trademark "STÜNDENGLASS," GS was granted both valid and subsisting federal statutory and common law rights to the Stündenglass trademark. *Id.* ¶ 10. At the time the Complaint was filed, Plaintiff was the owner of the following list of trademarks (collectively, "Marks" or "Trademarks"):

a. U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011.

b. U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034.

c. U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

Plaintiff has used the Stündenglass Marks in commerce throughout the United States, continuously, since 2020, in connection with the manufacturing of glass infusers and

accessories. *Id.* ¶ 13. The Stündenglass Marks are distinctive to both the consuming public and Plaintiff's trade. GS's Stündenglass branded products are made from superior materials. The superiority of Stündenglass branded products is not only readily apparent to consumers, but to industry professionals as well. *Id.* ¶ 14.

The Stündenglass Marks are exclusive to GS and appear clearly on GS's Stündenglass Products, as well as on the packaging and advertisements related to the Products. *Id.* ¶ 15. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting these Marks. *Id.* ¶ 15. As a result, products bearing GS's Stündenglass Mark are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS. *Id.* ¶ 15.

GS's Stündenglass Products have become some of the most popular of their kind in the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs. *Id.* ¶ 16. Because of these and other factors, the GS brand, the Stündenglass brand, and GS's Stündenglass Marks are famous throughout the United States. *Id.* ¶ 16.

Since 2020, GS has worked to build significant goodwill in the Stündenglass brand in the United States. GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the Stündenglass brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotions. *Id.* ¶ 17. The Stündenglass Products have been praised and recognized by numerous online publications, as well as publications directed to the general public. *Id.* ¶ 18.

    b.  <u>The Stündenglass Marks are Counterfeiting Target</u>

GS sells its products under the Stündenglass Marks to authorized stores in the United

States, including in Florida. GS has approximately 3,000 authorized stores in the United States selling its products. As such, Stündenglass branded products reach a vast array of consumers throughout the country. *Id.* ¶ 20.

It is because of the recognized quality and innovation associated with the Stündenglass Marks that consumers are willing to pay higher prices for genuine Stündenglass products. For example, a Stündenglass brand glass infuser is priced at $599.95, while a non-Stündenglass branded product is also being sold for up to $600.00, with a range of $199.00 to $600.00. *Id.* ¶ 21.

    c. <u>Defendants' Infringing Conduct and Failure to Litigate.</u>

Defendants have engaged in continuous and systematic business in Florida and derive substantial revenue from commercial activities in Florida. Specifically, Defendants have engaged in the unlawful manufacture, retail sale, and/or wholesale sales of counterfeit Stündenglass branded glass infusers and related parts ("Counterfeit Goods"). *Id.* ¶ 6. Defendants have sold goods with Trademarks registered to Plaintiff. *Id.* ¶ 25-26. Defendants' acts constitute willful trademark infringement. *Id.* ¶ 43. Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by Defendants. *Id.* ¶ 42-43. Defendants have failed to respond to the Complaint or otherwise appear in this action.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter a default judgment against properly served defendants who fail to timely file a responsive pleading. By such a default, all of the plaintiff's well-pled allegations in the complaint are deemed admitted. *See Ordonez v. Icon Sky Holdings LLC*, 10-60156-CIV, 2011 WL 3843890, at *5 (S.D. Fla. Aug. 30, 2011) (citing

*Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987)). "If the admitted facts in the Complaint establish liability, then the Court must determine appropriate damages." *Id*. "Where all the essential evidence is on record, an evidentiary hearing on damages is not required." *Id*. (citing *SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)).

### III. DISCUSSION

#### a. Default Judgment

Plaintiff filed its Complaint on March 1, 2022. ECF No. [1]. Defendants have failed to respond to the Complaint or otherwise appear in the instant action. Since Defendants have not responded to the Complaint or otherwise appeared in the instant action, Plaintiff cannot continue to litigate this case on the merits. As such, if default judgment is not granted, Plaintiff will be left with no recourse for its injuries to its reputation and business caused by Defendants' illegal counterfeiting activities. Such an outcome is unfairly prejudicial to Plaintiff, and a default judgment is warranted.

#### b. Statutory Damages

To prevail on a trademark infringement claim under 15 U.S.C. § 1114, a plaintiff must prove that a defendant used, without the consent of the registrant, "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark: which is likely to cause confusion, or to cause mistake, or to deceive." Plaintiff must demonstrate "(1) that it had prior rights to the mark at issue and (2) that the Defendants had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001) (citing *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 360 (11th Cir. 1997) (internal citation omitted)). In determining if a likelihood of confusion exists, the Eleventh Circuit identified

5

seven factors: the type of mark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, the defendants' intent, and actual confusion. *Id.* (citing *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 972 (11th Cir. 1983)); *see also Rolex Watch U.S.A., Inc. v. Canner*, 645 F. Supp. 484, 488 (S.D. Fla. 1986).

Plaintiff is the owner of the Stündenglass Trademarks, which are exclusive to Plaintiff. Defendants do not have Plaintiff's consent to sell products that are not genuine Stündenglass products. Plaintiff has been damaged by Defendants' acts because those acts were committed with the intent to trade on the goodwill of the Stündenglass Marks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's vaporizers to Defendants. As for Defendants' sale of counterfeiting goods, Plaintiff specifically points to three (3) Marks: (1) U.S. Trademark Registration Number 6,633,884 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 011, (2) U.S. Trademark Registration Number 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in the registration in international class 034, and (3) U.S. Trademark Registration Number 6,174,291 for the standard character mark "Stündenglass" in association with goods further identified in registration in international class 034.

Plaintiff further alleges that Defendants have sold in commerce Counterfeit Goods using reproductions, counterfeits, copies and/or colorable imitations of Stündenglass Marks. In fact, Defendants did sell a glass infuser with three (3) fake Stündenglass Marks, which is a counterfeit product. The glass infuser, which donned the Trademarks, was sold for profit in the ordinary stream of commerce. Defendants used images and names identical to or confusingly similar to the Stündenglass Marks, to confuse customers and aid in the promotion and sales of Counterfeit

Goods. Defendants' use of the Stündenglass Marks includes importing, advertising, displaying, distributing, selling, and/or offering for sale unauthorized copies of Stündenglass branded products. Defendants' offering to sell, selling, importing, and encouraging others to import Counterfeit Goods bearing the Marks in this manner was and is likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

Defendants' acts constitute willful trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114. Moreover, it constitutes false designation of origin which is likely to cause confusion and mistake as it will deceive consumers as to the source or origin of such goods or sponsorship or approval of such goods by Plaintiff. As a result, the elements described by the Court have been satisfied, and statutory damages must be awarded.

The Lanham Act provides, in pertinent part:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title) in connection with the sale, offering forsale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of —(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or (2) *if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.*

15 U.S.C. § 1117(c) (emphasis added). Because Defendants have refused to cooperate, as indicated through the failure to obtain counsel, and continue the litigation, it is not possible for Plaintiff to establish the exact damages with certainty.

While actual damages to Plaintiff may not be calculated with exact certainly, an assessment of damages has been completed by Plaintiff. *See* ECF No. [20-3]; *see also* ECF No. [20-1]. The owner of GS, Chris Folkerts, states that Plaintiff is seeking only a fraction of the actual losses to its business and that damages of $150,000.00 are reasonable since the actual

damages to the business are far in excess of this amount. ECF No. [20-3] ¶¶ 8, 9, 15.

Further, in *Ramada Inns, Inc. v. Gadsden Motel Co.*, the Eleventh Circuit Court held:

> Great latitude is given the trial judge in awarding damages, and his judgment will not be set aside unless the award is clearly inadequate. This is especially true of an award fashioned pursuant to the Lanham Act which expressly confers upon district judges wide discretion in determining a just amount of recovery for trademark infringement.

804 F.2d 1562, 1564-65 (11th Cir. 1986) (citations and internal quotation marks omitted). Based on the discretion this Court is given in Lanham Act cases such as this and the damages assessment, the Court determines that an award of $150,000.00 ($50,000.00 per Mark) is the appropriate amount of statutory damages that is well within the discretion of the Court to award. This amount not only reflects actual damages suffered by Plaintiff, but also sends an unequivocal message to the industry that counterfeiting will not be tolerated, nor will misrepresentations or otherwise refusing to cooperate with discovery demands. Here, Defendants have infringed on three (3) of Plaintiff's trademarks with the Registration Numbers 6,633,884, 6,174,292 and 6,174,291, justifying $150,000.00 in statutory damages.

    c. Costs of the Litigation

Pursuant to 15 U.S.C. § 1117, Plaintiff requests that this Court award costs in the total amount of $1,147.89 consisting of the filing fee ($402.00), the process server fee ($90.00), and Plaintiff's investigation fees ($655.89). *See* ECF No. [20-2] ¶ 7. The Court finds the requested attorneys' fees and costs to be reasonable and that Plaintiff is entitled to recover the costs of the action. *See* 15 U.S.C. § 1117.

8

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion, **ECF No. [20]**, is **GRANTED**.

2. Final Judgment will be entered by a separate order.

**DONE AND ORDERED** in Chambers at Miami, Florida, on May 18, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record